NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Portsmouth Family Division
No. 2022-0228

IN RE G.F.

Argued: November 10, 2022
Opinion Issued: January 20, 2023

John A.M. Hinsman III, of Dover, on the brief and orally, for the father.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Audriana Mekula-Hanson, attorney, on the brief and orally), for the New Hampshire Division for Children, Youth and Families.

MACDONALD, C.J. The father appeals an order of the Circuit Court (Pendleton, J.) terminating his parental rights over his minor child, G.F., on the ground that he failed to correct, within twelve months, the conditions that led to the court's finding under RSA chapter 169-C (2022) that G.F. was neglected by G.F.'s mother. We reverse.

I. Background

The following facts are supported by the record. In December 2019, the New Hampshire Division for Children, Youth and Families (DCYF) brought two neglect petitions against the mother relating to G.F. and her other minor child.

DCYF obtained ex parte authorization to remove the children from the mother's care and they were placed with a foster family. The father of G.F. is a non-accused parent in the mother's neglect case and has no relation to G.F.'s sibling. DCYF notified the father by a telephone call of G.F.'s removal, but did not file a petition against him or cause him to be served with the neglect petitions against the mother.

In January 2020, the father did not attend the mother's adjudicatory or dispositional hearings. At the adjudicatory hearing, the mother entered into a consent agreement acknowledging that neglect occurred due to her drug use. At the dispositional hearing, the Circuit Court (Pendleton, J.) adopted a case plan and dispositional orders, which also applied to the father. The father was not served with these documents.

In April 2020, the trial court held a three-month review hearing. The court ordered DCYF to "supply the father's counsel with all relevant discovery, and authorize[d] the father to receive a copy of the Case Plan and Dispositional order." The court found that on May 4, 2020, the father's counsel received the case plan, dispositional orders, and related discovery.

In August 2020, the father appeared at the six-month review hearing. Two days after the six-month review hearing, the father was arrested for felony second degree assault and other domestic violence charges involving his then girlfriend and her minor child. He pled guilty to at least two of the charges. In September 2020, a nine-month review hearing was held.

In January 2021, the trial court held the first permanency hearing in the neglect case. The father remained incarcerated. The trial court found that the father was not in compliance with dispositional orders. The trial court changed the permanency plan from reunification to adoption and specified that "DCYF is no longer required to provide reasonable efforts to facilitate reunification between [G.F.] and mother [and] father, but shall make reasonable efforts to finalize the permanency plan." The trial court authorized DCYF to file petitions for termination of both parents' parental rights to G.F.

In August 2021, the mother's parental rights to G.F. were terminated. The trial court denied DCYF's petition to terminate the father's parental rights because he "had not been given 12 months from constitutionally sufficient service to address the Dispositional Orders and Case Plan."

In September 2021, the Circuit Court (Joseph, J.) held a second permanency hearing in the neglect case. The father appeared telephonically from the jail. The trial court found that the father was not in compliance with the outstanding dispositional orders and concluded that G.F. could not be safely returned to his care. The trial court again specified that the permanency

plan was adoption and that "DCYF is no longer required to provide reasonable efforts to facilitate reunification between [G.F.] and mother [and] father, but shall make reasonable efforts to finalize the permanency plan[.]"

DCYF filed a new petition to terminate the father's parental rights in October 2021. In December 2021, the father was released from incarceration.

In January 2022, a three-day trial was held on DCYF's petition for termination of the father's parental rights on the ground that he "failed to correct the neglectful conditions within a period of 12 months, beginning with the finding of neglect entered on January 6, 2020 and ending with the permanency determination made following the permanency hearing on September 2, 2021." See RSA 170-C:5, III (2022).

In February 2022, the Circuit Court (Pendleton, J.) granted DCYF's petition to terminate the father's parental rights. The trial court determined that, although the father did not receive constitutionally adequate notice until May 4, 2020, he was "not denied a meaningful opportunity to correct the conditions leading to neglect." The trial court found that DCYF had proved beyond a reasonable doubt that the father had not corrected the conditions of neglect and that termination was in G.F.'s best interest.

The father filed a motion to reconsider, arguing that DCYF did not make "reasonable efforts for 12 months after constitutionally sufficient notice of dispositional case plan goals." (Capitalization omitted.) DCYF objected, and the trial court denied the father's motion. This appeal followed.

On appeal, the father argues that there was insufficient evidence to support the trial court's finding that DCYF, under the direction of the court, assisted the father in correcting the conditions leading to the finding of neglect. DCYF contends that the trial court's finding regarding reasonable efforts is supported by sufficient evidence.

II. Analysis

When reviewing an appeal of termination of parental rights, we will not disturb the trial court's findings unless they are unsupported by the evidence or plainly erroneous as a matter of law. In re Zachary G., 159 N.H. 146, 153 (2009). A termination of parental rights petition may be granted when the court finds that "[s]ubsequent to a finding of child neglect or abuse under RSA 169-C, the parents have failed to correct the conditions leading to such a finding within 12 months of the finding despite reasonable efforts under the direction of the court to rectify the conditions." RSA 170-C:5, III. These elements must be proven beyond a reasonable doubt. Zachary G., 159 N.H. at 153. "In determining whether DCYF has made reasonable efforts to assist a parent in correcting the conditions that led to a finding of abuse or neglect, the

3

court must consider whether the agency provided services that were accessible, available, and appropriate." In re C.O., 171 N.H. 748, 756 (2019); see RSA 169-C:24-a, III(c).

Assuming without deciding that, during the nine months in which DCYF was ordered by the court to make reasonable efforts to reunify G.F. with his father, those efforts were reasonable, we nevertheless conclude that DCYF failed to meet its burden because the court did not order DCYF to make such efforts for the remaining three months.

Under the plain language of the statute, DCYF could not establish that the father failed to correct the conditions of neglect "within 12 months of [that] finding despite reasonable efforts under the direction of the court to rectify the conditions." RSA 170-C:5, III (emphasis added). The trial court changed the permanency plan from reunification to adoption in January 2021, three months short of the twelve months after the father received constitutionally adequate notice in May 2020. Although the trial court denied DCYF's first petition to terminate the father's parental rights and he subsequently had more time to correct the conditions of neglect, the permanency plan was never changed to reunification and DCYF was relieved of its obligation to make reasonable efforts to reunify.

RSA 169-C:24-b, III states that "[a]t a permanency hearing the court shall determine whether the department has made reasonable efforts to finalize the permanency plan that is in effect. Where reunification is the permanency plan that is in effect, the court shall consider whether services to the family have been accessible, available, and appropriate." (Emphasis added). Therefore, when adoption is the permanency plan, DCYF's reasonable efforts must be intended to facilitate the adoption of the child, not to "prevent placement and reunify the family." RSA 169-C:24-a, III(c). Thus, there was no "direction of the court" following the permanency order in January 2021 because the permanency plan remained adoption. See RSA 170-C:5, III.

Accordingly, we reverse the trial court's order terminating the father's parental rights over G.F. In light of our decision, we need not address the father's remaining arguments.

Reversed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

4